# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

COMMERCIAL REPAIRS AND SALES, LLC,

    Plaintiff,

v.                                     Case No. 8:17-cv-02439-T-60JSS

SIGNET JEWELERS LIMITED,
SIGNET GROUP SERVICES US INC.,
SIGNET SERVICE PLANS INC.,
STERLING JEWELERS INC.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Defendants' (collectively "Signet") "Motion for Summary Judgment and Supporting Memorandum of Law." (Doc. # 48). Plaintiff Commercial Repairs and Sales, LLC ("CRS") filed a response in opposition to Defendants' motion on August 16, 2019. (Doc. # 57). Defendants filed a reply on September 10, 2019. (Doc. # 62). On November 6, 2019, the Court held a hearing on this matter. (Doc. # 65). On review of the motion, response, court file, and record, the Court finds as follows:

## Background

CRS is a Florida-based company that provides construction improvement and facility management services throughout the United States. (Doc. # 2). Signet is a jewelry conglomerate with retail locations all around the world. (*Id.*).

The facts of this case are largely undisputed. On July 31, 2015, Signet and Pristine Environments, Inc. entered into a contract where Pristine agreed to provide general maintenance services for Signet's retail stores (the "contract"). (Doc. # 2-1). Pristine then subcontracted with CRS (the "subcontract"). (Doc. # 2-2). The terms of the contract and subcontract required that, once Signet issued a service request to Pristine, it would enter Pristine's online portal and be assigned to a subcontractor (in this case, CRS). The subcontractor would then go to the Signet retail location, confirm the request, and determine the scope of work. (Docs. ## 2-1, 2-2, 55-1). If the service request was classified as general maintenance, the subcontractor would simply provide the service and invoice Pristine. If the service was outside the scope of work, the subcontractor was required to notify Pristine and await issuance of a work ticket prior to performance. (Doc. #2-1, Page ID 132, ¶ 4); (Doc. # 2-2, § 5(d)).

Between December 1, 2015, and April 1, 2016, CRS – at Pristine's direction – performed approximately $220,000 worth of services in Signet's Florida stores. (Doc. # 2-2). During that period, CRS never specifically identified any of its services as outside work.[1] CRS billed Pristine for every service it performed, Pristine billed Signet, and Signet paid everything it was invoiced by Pristine. (Doc. # 47-1).[2] However, Pristine only paid CRS a fraction of what it owed CRS for its services. (Doc. # 2). CRS sued Pristine in state court in November 2016, and the state court entered summary judgment in favor of CRS on January 5, 2017. (*Id.*). Though Pristine itself was

---

[1] The record is devoid of any evidence that CRS, Pristine, or Signet ever labeled any of CRS's work as "outside work" or "special maintenance."
[2] CRS confirmed it invoiced everything to Pristine at the summary judgment hearing.

insolvent, CRS reached a settlement with Pristine's subsidiaries that ostensibly only covers general maintenance services. (Docs. ## 45-1, 57).

Now, in this action, CRS contends that some of its work should be classified as outside work for which it has not been paid. (Doc. # 2). CRS filed its case against Signet in Florida's Thirteenth Judicial Circuit on February 9, 2017. (Doc. # 1-1). On March 17, 2017, the case was removed to this Court. On August 24, 2017, the Court *sua sponte* dismissed the amended complaint for lack of subject matter jurisdiction. (Doc. # 1). CRS filed its second amended complaint in state court on September 20, 2017, and the case was once again removed on October 17, 2017. (Docs. ## 1, 2). The Second Amended Complaint alleges a single count for unjust enrichment. (Doc. # 2).

Specifically, CRS alleges that:

(1) The installation of new ladder hooks is outside the contractual provision providing for the "installation of wall brackets, including fasteners;"[3]
(2) The removal and replacement of doors is outside the general health and safety maintenance provision, which expressly provides for maintenance and repairs on "inoperable Grills/Gates or doors" as an example of such work;
(3) The repainting of whole walls is outside the facility preventative maintenance clause that provides for "[t]ouch up paint as needed;" and
(4) The installation of new promotional banners and signs exceeds the standard inspection and repair of signage.

(Docs. ## 2, 2-1, 57, 62, 65).[4]

---

[3] "A ladder hook consists of two or three hooks to hold a ladder against a wall." *See* (Doc. # 62).
[4] Originally, CRS sought the entire difference between its invoices and what CRS was paid by Pristine. *See* (Docs. ## 2, 57). Now, CRS only seeks repayment of work it considers to be "outside work." *See* (Doc. # 57). At the hearing, CRS confirmed that the four services listed here were the remaining issues in question.

## Legal Standard

The Court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is determinative of a legal element of a claim that "might affect the outcome of the case." *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Whether a genuine issue concerning a material fact exists is itself a question of law that must be decided by the court." *See Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1317–18 (11th Cir. 2015).

The moving party bears the initial burden to show there is no genuine issue of material fact, and all factual inferences are viewed in the light most favorable to the nonmoving party. *Cozzi v. City of Birgmingham*, 892 F.3d 1288, 1293 (11th Cir. 2018); *Allen*, 121 F.3d at 646; *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1532 (11th Cir. 1987). Once the moving party has met its burden, the nonmoving party must identify facts and evidence that show the existence of a genuine issue of material fact. *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). Speculation does not create a genuine issue of fact and there must be more than a mere scintilla of evidence to survive summary judgment. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## Discussion

Unjust enrichment is an equitable remedy that allows a court to create an implied or quasi-contract upon which a plaintiff may recover for goods sold or services rendered to a benefitting party who has not provided adequate consideration. *See*

*RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1355 (M.D. Fla. 2019) (Moody, J.) (quoting *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999)).[5] The primary focus in this analysis is not whether the plaintiff has been wronged, but whether the defendant has unjustly knowingly received and accepted a benefit for which it has not paid. *See Tooltrend*, 198 F.3d at 808 (quoting *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 388 (Fla. 4th DCA 1997)); *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1060 n.2 (Fla. 4th DCA 2006).

To prevail on an unjust enrichment claim under Florida law, a plaintiff must establish: (1) that it provided a benefit to the defendant; (2) that the defendant had knowledge of the benefit; (3) that the defendant accepted the benefit; and (4) that under the circumstances, it would be inequitable for the defendant to retain the benefit without paying adequate value for it. *RxStrategies*, 390 F. Supp. 3d at 1355 (quoting *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)). A subcontractor attempting to recover from its general contractor's client for unjust enrichment must further prove: (1) it has exhausted all remedies against the general contractor and remains unpaid; and (2) the client-defendant has not paid any person for the work furnished by the subcontractor. *Commerce P'ship.*, 695 So.2d at 388.

In its affidavit, Signet states that it paid all of Pristine's invoices in full. Further, at the summary judgment hearing, CRS acknowledged it invoiced Pristine for every service it provided. As a result, the undisputed facts show that Signet paid Pristine in full and that its payment included CRS's services. CRS contends, however, that the

---

[5] CRS may bring its unjust enrichment claim because it was never in direct privity with Signet. *See* (Doc. # 28); *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 2d DCA 1998).

Court's review should not stop there and argues that Signet's payment for these services as general maintenance was insufficient.

The standard for adequate consideration is not whether a subcontractor agrees with the rate its general contractor charged a client. Rather, under Florida law, "while it may be unjust that a subcontractor was not [adequately] paid for its services, that injustice was not visited upon the subcontractor by the [client] who paid the general contractor in full, but by the general contractor who hired the sub[contractor]." *Commerce P'ship.*, 695 So. 2d at 388 (citing *Yates v. Bernard's Carpet and Draperies, Inc.*, 481 So. 2d 515, 516 (Fla. 4th DCA 1985)) (internal citations omitted); *see Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1333 (M.D. Fla. 2015); *Gene B. Glick Co., Inc. v. Sunshine Ready Concrete Co., Inc.*, 651 So. 2d 190, 190 (Fla. 4th DCA 1995). A client is not unjustly enriched merely because a subcontractor believes a general contractor has undercharged for its services. This principle is especially applicable here because CRS, the subcontractor, was contractually obligated to play a role in classifying its services to make sure it got paid. Absent some sort of clear and substantial mistake or error in how Signet was billed by Pristine, Signet's payment to Pristine for CRS's services constitutes adequate consideration and defeats an unjust enrichment claim.

However, CRS argues that it performed certain additional work – not covered by the contract or subcontract – for which it was not paid. Under the terms of the contract, Pristine was responsible for determining the scope of work prior to performance, and through the subcontract vested that responsibility in CRS. § 5(d) of the subcontract states:

> Additional Work. [Pristine] must approve and process a work ticket for any work outside the specification of this Agreement if requested by [Signet]. It

> is [CRS's] responsibility to notify [Pristine] of these requests and to wait to be issued Work Ticket number by [Pristine] before commencing work. The work ticket number must be referenced on [CRS's] invoice to ensure payment.

*See* (Doc. # 2-2).

It is apparent from the language in the contract that the scope of work is intended to be broadly construed. *See* (Doc. # 2-1). The scope of work is "outlined" in the document and contains non-exhaustive lists of "examples" and general "categories" of services. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (explaining that courts are required to apply the plain meaning of a contract); (Doc. # 2-1, Page ID 129, 133, 135). In this case, CRS: (1) installed new ladder hooks where the contract specifies the installation of wall brackets; (2) installed new doors where the contract specifies maintenance and repair of doors as an example of general maintenance; (3) painted a whole wall where the contract refers to touch-up paint; and (4) installed new signs where the contract calls for the repair and replacement of signage. These services appear to be substantially similar – or perhaps even identical – to the services included in the general maintenance services broadly outlined in the contract.

It is important to note that CRS did not identify any of these services as additional work at the time of performance as required by its contract with Pristine. Yet, now that it has not been paid by Pristine, CRS argues that this work was outside of the contract and it never received payment.[6]

The best evidence regarding whether the work at issue here was outside of the contract is what the parties themselves actually did before litigation began. It is

---

[6] The Court notes that CRS has now been paid through CRS's subsidiaries for the vast majority of its alleged outstanding invoices. *See* (Docs. ## 45-1, 57).

apparent from the language of the contract and subcontract, *as well as the actions of the parties themselves*, that these services were treated as general maintenance at the time of performance and not something outside of the contract. *Gold Crown Resort Marketing, Inc. v. Phillpots*, 272 So. 3d 789, 792 (Fla. 5th DCA 2019) (citing *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So. 2d 381, 383 (Fla. 5th DCA 2005)) ("Contracts should be construed to give effect to the intentions of the parties."). The record shows no obvious discrepancy, inconsistency, or mistake in how these services were invoiced. As a result, the Court finds that Signet's payment of CRS's work as general maintenance was adequate consideration and a claim for unjust enrichment cannot survive.

## Conclusion

The Court finds that: (1) Signet paid Pristine for CRS's services as general maintenance; and (2) Signet's payment for CRS's services as general maintenance constitutes adequate consideration. Consequently, Signet was not unjustly enriched as a matter of law and is entitled to summary judgment in its favor.

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendants' Motion for Summary Judgment is **GRANTED**.
2. The Clerk is directed to enter final judgment in favor of **SIGNET JEWELERS LIMITED**, **SIGNET GROUP SERVICES US INC.**, **SIGNET SERVICE PLANS INC.**, and **STERLING JEWELERS INC.**
3. The Clerk is further directed to close this case after entry of final judgment.

**DONE** and **ORDERED** in Chambers in Tampa, FL this 22nd day of November, 2019.

 

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**